E-FILED
Friday, 23 April, 2021  02:49:31 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROBERT A. CRAFT** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.   21-cv-3098** |
| **v.** | ) | |
| | ) | **Judge:** |
| **QUAKER MANUFACTURING LLC,** | ) | |
| **and SUSAN REYNOLDS, individually** | ) | |
| | ) | **PLAINTIFF DEMANDS TRIAL** |
| **Defendant.** | ) | **BY JURY** |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, **ROBERT A. CRAFT**, by his attorneys, John C. Kreamer and Joseph E. Urani of The Kreamer Law Group, LLC., and in complaining of Defendants, **QUAKER MANUFACTURING LLC**, and **SUSAN REYNOLDS**, states as follows:

## NATURE OF CLAIM

1.  This action seeks redress for harassment and discrimination in violation of Title VII, as amended by the Civil Rights Act, discrimination based on race, Caucasian, and color, white.  This action also seeks redress for discrimination in violation of Title VII, based on sex, male, and discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq.*  This matter also seeks redress for retaliation under Title VII for complaining about race and sex discrimination and the ADEA for complaining about age discrimination and a hostile work environment.

2.  This matter also seeks state law claims, including common-law retaliation, retaliation for filing a workers compensation claim and seeking medical care for a work-related injury, exercising his union rights, and defamation.

**PARTIES**

3.   Plaintiff, ROBERT A. CRAFT (hereinafter "Craft" or "Plaintiff") is a fifty-six-year-old male citizen of the United States and resident of West Lebanon, Indiana, Warren County, at all relevant times herein.

4.   CRAFT was at all relevant times an employee of Defendant QUAKER MANUFACTURING LLC (hereinafter "QUAKER" or "Defendant"), as a maintenance mechanic at the Danville, Illinois location.

5.   Defendant QUAKER is a corporation doing business in the State of Illinois and throughout the United States and is located at 1703 E. Voorhees Street, Danville, IL, Vermilion County and is a covered entity within the meaning of Title VII and the ADEA.

6.   Defendant, SUSAN REYNOLDS at all relevant times, was employed by QUAKER as its Human Resources Senior Manager at the Danville, Illinois location and, upon information and belief, is a resident of Fountain County, Indiana.

**JURISDICTION AND VENUE**

7.   Jurisdiction of this Court is invoked under 28 U.S.C. §1343(a)(3) and (4) and 28 U.S.C. §1331 to secure the protection of and to redress the deprivation of rights secured by Title VII and the ADEA.  Supplemental jurisdiction is based upon 28 U.S.C. §1367(a).

8.   The venue of this action properly lies in the Central District of Illinois under  28 U.S.C. §1391.  The unlawful employment practices and claims alleged herein were committed in the Central District of Illinois.

## PROCEDURAL REQUIREMENTS

9.  CRAFT has fulfilled all conditions precedent to the institution of this action.  He timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and has received a Right to Sue letter.  The Right to Sue letter is attached hereto and made a part hereof as Exhibit A.

## FACTUAL BACKGROUND

10. Plaintiff was employed by Quaker Manufacturing L.L.C. in Danville, Illinois, from on or about December 1, 2014, until he was unlawfully terminated on or about April 30, 2020.

11. During all relevant times, Plaintiff was employed by Defendant as a maintenance mechanic.

12. At all times during his employment, Plaintiff performed his job to the legitimate expectations of Defendant and beyond and had no disciplinary issues.

13. During the course of Plaintiff's employment, on or about April 24, 2020, he came to work on the second shift that was set to start at 3:00 pm.  Plaintiff arrived at approximately 2:30 pm and joined two coworkers, Joe Partenheimer and Mark Dale, at a table in the cafeteria.

14. Plaintiff and his two coworkers engaged in small talk, and the subject of Covid-19 came up.  During that conversation, Plaintiff mentioned to his two coworkers at the table that he had read an article that indicated that the Obama Administration and Dr. Fauci sent funding to Wuhan, China, to develop a virus.

15. At that time, Plaintiff opined that if Covid-19 was the result of that funding, Dr. Fauci and the Obama Administration could be in a lot of trouble or should "both be hung out to dry." By this statement, Plaintiff meant that it was his opinion that the Obama Administration

and Dr. Fauci should be held accountable for any part they may have played in the creation or development of the Covid-19 virus.

16. Another employee, Tim Rose, was sitting at another table on the other side of the cafeteria several feet away and with his back turned against the direction of Plaintiff, and allegedly thought he heard Plaintiff say, "Obama should have been hung by a tree." Tim Rose then complained about what he felt he allegedly heard Plaintiff say to the human resources department of Defendant.

17. Later in the day, on April 24, 2020, Human Resources Manager Susan Reynolds came to Plaintiff's location in the facility and asked to talk to him.

18. At that time, Plaintiff did not know why Ms. Reynolds wanted to speak with him and, prior to the conversation starting, told Ms. Reynolds that he would call a Union steward. To this, Ms. Reynolds responded, "there is no need. You are not in trouble." Plaintiff was thus denied his union rights at this meeting.

19. After Plaintiff told Ms. Reynolds that he would call a Union steward before the meeting occurred, Ms. Reynolds 1) did not grant that request and delay her questioning of Plaintiff until the Union representative arrived and had a chance to consult privately with Plaintiff; 2) did not deny the request and end the interview immediately; and/or 3) did not give Plaintiff a clear choice between having the interview without representation or ending the interview.

20. Ms. Reynolds and Defendant based their decision to terminate Plaintiff in large part, if not solely, upon what was discussed during this April 24, 2020 interview with Plaintiff.

21. In the April 24, 2020 conversation with Reynolds, Plaintiff was asked about his earlier discussion in the cafeteria with his coworkers regarding Covid-19 and was asked if he

said he wanted to "hang President Obama from a tree," or if "Obama should be hung from a tree," to which Plaintiff immediately told Ms. Reynolds he absolutely did not.

22. Plaintiff explained to Ms. Reynolds the full extent of the conversation he had with his coworkers regarding the Covid-19 article he read as discussed above.

23. Plaintiff also told Ms. Reynolds at this meeting that he would certainly apologize to anyone, including Mr. Rose, who allegedly misinterpreted his comment and explain that he did not say what he was being accused of.

24. At the conclusion of the April 24, 2020 meeting with Reynolds, Plaintiff complained that it was done in violation of his union rights and that she immediately presumed he must be racist because he is a Caucasian, white male over the age of 50, and that this was a violation of his rights.

25. On or about April 27, 2020, without any chance to talk with Mr. Rose, Plaintiff was suspended pending further investigation.

26. At the time of being notified of his suspension on or about April 27, 2020, Plaintiff complained to Susan Reynolds and his supervisors that his suspension was due to the immediate presumption that he must have made the racist comment as alleged against him and that he was immediately presumed to be a racist because he is a Caucasian, white, male over the age of 50, and that this was a violation of his rights, and that he was being retaliated against for making these complaints.

27. At the time of being notified of his suspension on or about April 27, 2020, Plaintiff complained again to Reynolds and his supervisors that he was being retaliated against for being a Caucasian, white male over the age of 50, for asking for union representation at the meeting on April 24, 2020, and for seeking medical care for an injury to his left knee sustained at

work on or about 2017 and for a workers' compensation claim against Defendant that he previously filed on or about 2017, that is currently still pending.

28. On April 30, 2020, Plaintiff was called into work and was unlawfully terminated by Defendant without any further questioning or investigation.

29. At the time of being notified of his termination, Plaintiff complained to his supervisors that his termination was due to the immediate presumption that he must have made the racist comment as alleged against him and that he was immediately presumed to be a racist because he is a Caucasian, white, male over the age of 50, and that this was a violation of his rights.  Plaintiff also complained at this time that he was being retaliated against for asking for union representation at the meeting on April 24, 2020, and for seeking medical care for his work-related injury and filing a workers' compensation claim as discussed above and that he was being retaliated against for making these complaints.

30. Upon learning that it was wrongfully interpreted as to what Plaintiff said about the Obama Administration and Dr. Fauci, Plaintiff was treated as though he made a racist statement for certain and without any doubt, and without any clear evidence.  This was done by Defendant because Plaintiff is Caucasian, white, and a male over the age of 50.

31. Defendant immediately jumped to this final conclusion, without any clear evidence and meaningful investigation, and Plaintiff would not have been treated in that way by Defendant had Plaintiff not been Caucasian, white and a male, and over the age of 50.

32. Defendant, by its actions and inactions, treated Plaintiff differently than other employees who were not Caucasian and white, or males over the age of 50.

33. Defendant deliberately failed to thoroughly investigate the situation or give any credence to the totality of the evidence that was discovered, and had Plaintiff not been a

Caucasian, white male over the age of 50; he would not have been treated in this way by Defendant.

34. Defendant, by its communications, statements, actions, and inactions, knew or should have known that it made and published a false and defamatory statement to the other employees and coworkers of Plaintiff at the company and that Plaintiff was guilty of being a racist and that he for certain, and without any doubt, made the racist comment that he was accused of.

35. Reynolds, between April 24, 2020, through April 30, 2020, knew or should have known that she made and published a false and defamatory statement to others within the company and to Union officials, including but not limited to Mike Miller, her direct boss; Maggie Donnelly, Head of H.R. Corporate; Dave Cramp, Plant Manager; Tom Ford, Superintendent of the Maintenance Department; Chelsea Betz, Maintenance Manager; Crystal Wells, Vice President of the Union; and Troy Pate, Secretary of the Union.  The false and defamatory statement being that Plaintiff was guilty of being a racist and that he for certain, and without any doubt, made the racist comment that he was accused of.

36. Reynolds, between April 24, 2020, through April 30, 2020, made false and defamatory statements that Plaintiff was a racist to prospective employers of Plaintiff, including but not limited to Brandon Ricketts, and directly interfered with Plaintiff's attempt to mitigate the severe damages caused by Defendants.

37. Reynolds, between April 24, 2020, through April 30, 2020, knew or should have known that she portrayed the Plaintiff publicly in a false light to others within the company and to Union officials, including but not limited to Mike Miller, her direct boss; Maggie Donnelly, Head of H.R. Corporate; Dave Cramp, Plant Manager; Tom Ford, Superintendent of the

Maintenance Department; Chelsea Betz, Maintenance Manager; Crystal Wells, Vice President of the Union; and Troy Pate, Secretary of the Union.  The portrayal in false light being that Plaintiff was guilty of being a racist and that he for certain, and without any doubt, made the racist comment that he was accused of.

38. Reynolds, between April 24, 2020, through April 30, 2020, portrayed Plaintiff publicly in a false light by stating that Plaintiff was guilty of being a racist to prospective employers of Plaintiff, including but not limited to Brandon Ricketts, and directly interfered with Plaintiff's attempt to mitigate the severe damages caused by Defendants.

39. From April 24, 2020, through April 30, 2020, Plaintiff was subject to pervasive and continuous unwelcome harassment at the hands of Defendant, in the terms, conditions, and privileges of employment and in interfering with his work opportunities because of his race, color, sex, and age, in violation of Title VII and the ADEA.

40. Defendants' communications, actions, and inactions classified Plaintiff as a racist to all coworkers and colleagues of Plaintiff at the Company.

41. Any reason given for Plaintiff's termination was a pretext for reverse racism based on Plaintiff's race and color and discrimination against him because of his sex and age.

42. Plaintiff has suffered and will continue to suffer significant damages as a result of the above and has and will continue to suffer severe emotional distress and anxiety as a result of the above, damage to his reputation, character, and standing in the community and amongst his peers.  Plaintiff also has been subjected to defamation as a result of the above.

8

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII
## DEFENDANT QUAKER

43. Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

44. Plaintiff has a federally protected right to equal treatment in the workplace.

45. By the above actions, but not limited to the same, Defendant discriminated against Plaintiff in the terms, conditions, and privileges of employment because of his race, Caucasian American, in violation of Title VII.

46. By the above actions, but not limited to the same, Plaintiff was discriminated against in violation of Title VII by Defendant's managers, supervisors, and co-employees, which created an intimidating, hostile, and offensive work environment, which unreasonably interfered with his work performance, and severely affected his psychological well-being.

47. Non-Caucasian employees were not subjected to the same or similar treatment.

48. Plaintiff complained to his supervisors at Defendant regarding the above conduct. However, no action was taken by Defendant to address said complaints or to enforce a policy against racial discrimination or take any appropriate remedial measures.

49. Due to its inaction, Defendant acted in compliance with the aforementioned unlawful acts and ratified the same.

50. Defendant's wrongful acts, individually and by and through its agents, were deliberate, intentional, willful and wanton, and malicious and in total disregard and reckless indifference to rights under Plaintiff's Title VII.

51. Plaintiff was terminated on April 30, 2020, because of his race, Caucasian American.

52. As a direct and proximate result of the acts engaged in by Defendant, Plaintiff suffered severe damages, including but not limited to loss of pay, past, and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment; damages to reputation, attorney fees, costs and other damages allowed under Title VII.

53. The acts mentioned above of Defendant, individually and through its agents, were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, respectfully requests judgment against Defendant, QUAKER MANUFACTURING LLC, in an amount that will fully compensate him for his injuries and damages caused by Defendant's violation of his rights under Title VII and award Plaintiff all allowable damages under Title VII which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney's fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

## COUNT II RETALIATION – TITLE VII RACE DISCRIMINATION DEFENDANT QUAKER

54.  Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

55.  Plaintiff has a federally protected right to equal treatment in the workplace, and he attempted to exercise that right by complaining to Defendant regarding the flagrantly inappropriate and illegal behavior of Defendant as outlined above.

56. In addition to Defendant's refusal to address or resolve Plaintiff's complaints, Defendant, through its supervisors and agents, also engaged in illegal acts of retaliation against Plaintiff, including but not limited to differential treatment, creation of a hostile work environment, and termination.

57. Plaintiff was wrongfully terminated on or about April 30, 2020, in retaliation for the complaints he made concerning Defendant's unlawful conduct under Title VII.

58. As a direct and proximate result of the acts engaged in by Defendant, Plaintiff suffered severe financial damages, including but not limited to loss of pay, past, and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment, physical harm, damage to reputation, attorney's fees, costs and other damages allowable under Title VII.

59. The acts mentioned above of Defendant, individually and by and through its agents, were intentional, willful and wanton, malicious and oppressive, and in total disregard and reckless indifference to Plaintiff's rights under Title VII and justify the awarding of exemplary and punitive/liquidated damages in this cause.

60. Plaintiff has suffered and will continue to suffer significant damages as a result of the above.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, respectfully requests judgment against Defendant, QUAKER MANUFACTURING LLC., in an amount that will fully compensate him for his injuries and damages caused by Defendant's violation of his rights under Title VII and award Plaintiff all allowable damages under Title VII which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and

future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney's fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

## COUNT III
## SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII
## DEFENDANT QUAKER

61.   Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

62. Plaintiff is a member of a protected class based on his sex, male.

63.   By the above actions, but not limited to the same, Plaintiff was discriminated against in violation of Title VII by Defendant's managers, supervisors, and co-employees, which created an intimidating, hostile, and offensive work environment, which unreasonably interfered with his work performance, and severely affected his psychological well-being.

64. Non-male employees were not subjected to the same or similar treatment.

65.   Plaintiff complained to his superiors at Defendant regarding the above conduct. However, no action was taken by Defendant to address said complaints or to enforce a policy against sex discrimination or take any appropriate remedial measures.

66.   Due to its inaction, Defendant acted in compliance with the aforementioned unlawful acts and ratified the same.

67.   Defendant's wrongful acts, individually and by and through its agents, were deliberate, intentional, willful and wanton, and malicious and in total disregard and reckless indifference to Plaintiff's rights under Title VII.

68. Plaintiff was terminated on April 30, 2020, because of his sex, male.

69.  As a direct and proximate result of the acts engaged in by Defendant, Plaintiff suffered severe damages, including but not limited to loss of pay, past, and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment; damages to reputation, attorney fees, costs and other damages allowed under Title VII.

70.  The acts mentioned above of Defendant, individually and through its agents, were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, respectfully requests judgment against Defendant, QUAKER MANUFACTURING LLC, in an amount that will fully compensate him for his injuries and damages caused by Defendant's violation of his rights under Title VII and award Plaintiff all allowable damages under Title VII which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney's fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

## COUNT IV RETALIATION – TITLE VII SEX DISCRIMINATION DEFENDANT QUAKER

71.  Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

72.  Plaintiff has a federally protected right to equal treatment in the workplace, and he attempted to exercise that right by complaining to Defendant regarding the flagrantly inappropriate and illegal behavior of Defendant as outlined above.

73.   In addition to Defendant's refusal to address or resolve Plaintiff's complaints, Defendant, through its supervisors and agents, also engaged in illegal acts of retaliation against Plaintiff, including but not limited to differential treatment, creation of a hostile work environment, and termination.

74.   Plaintiff was wrongfully terminated on or about April 30, 2020, in retaliation for the complaints he made concerning Defendant's unlawful conduct under Title VII.

75.   As a direct and proximate result of the acts engaged in by Defendant, Plaintiff suffered severe financial damages, including but not limited to loss of pay, past, and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment, physical harm, damage to reputation, attorney's fees, costs and other damages allowable under Title VII.

76.   The acts mentioned above of Defendant, individually and by and through its agents, were intentional, willful and wanton, malicious and oppressive, and in total disregard and reckless indifference to Plaintiff's rights under Title VII and justify the awarding of exemplary and punitive/liquidated damages in this cause.

77.   Plaintiff has suffered and will continue to suffer significant damages as a result of the above.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, respectfully requests judgment against Defendant, QUAKER MANUFACTURING LLC., in an amount that will fully compensate him for his injuries and damages caused by Defendant's violation of his rights under Title VII and award Plaintiff all allowable damages under Title VII which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and

future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney's fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

## COUNT V
## AGE DISCRIMINATION IN VIOLATION OF ADEA – DEFENDANT QUAKER

78.   Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

79.   Plaintiff was terminated on April 30, 2020. Younger individuals were not terminated and were treated more favorably.

80.   Defendant's proffered reason for Plaintiff's discharge is pretextual.  The reason Plaintiff was discharged was due to his age and in retaliation for making the complaints above concerning the same.

81. Upon information and belief, Plaintiff was replaced by a younger individual.

82.   By the above actions, but not limited to the same, Defendant discriminated against Plaintiff in the terms, conditions, and privileges of employment because of his age, in violation of the ADEA.  Any alleged reasons given to the contrary are pretextual, and Plaintiff has suffered and will continue to experience significant damages as a result of the above.

83.   By the above actions, but not limited to the same, Defendant took adverse employment actions against Plaintiff, which severely affected his physical and psychological well-being and caused him to suffer significant damages.  Any alleged reasons given to the contrary for Defendant's actions are pretextual.

84.   Defendant's wrongful acts, individually or by and through its agents, were intentional, willful and wanton, malicious and oppressive, and in total disregard and reckless

indifference to Plaintiff's rights under the ADEA and justify the awarding of exemplary and liquidated damages in this cause.

85.  As a direct and proximate result of the acts engaged in by Defendant, Plaintiff suffered severe financial damages, including but not limited to loss of pay, past, and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment, physical harm, damage to reputation, attorney's fees, costs and any other damages allowable under the ADEA.  Plaintiff has suffered and will continue to experience significant damages as a result of the above.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, respectfully requests judgment against Defendant, QUAKER MANUFACTURING LLC., in an amount that will fully compensate him for his injuries and damages caused by Defendant's violation of his rights under the ADEA and award Plaintiff all allowable damages under the ADEA which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney's fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

## COUNT VI
## RETALIATION – ADEA – DEFENDANT QUAKER

86.  Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

87.   Plaintiff has a federally protected right to equal treatment in the workplace, and he attempted to exercise that right by complaining to Defendant through his superiors regarding the flagrantly inappropriate and illegal behavior of Defendant as outlined above.

88.   In addition to the Defendant's refusal to address or resolve the Plaintiff's complaints, Defendant, through its supervisors and agents, also engaged in illegal acts of retaliation against Plaintiff, including but not limited to differential treatment, creation of a hostile work environment, and termination.

89.   Plaintiff was wrongfully terminated on April 30, 2020, in retaliation for the complaints he made concerning Defendant's unlawful conduct under the ADEA.

90.   As a direct and proximate result of the acts engaged in by Defendant, the Plaintiff suffered severe financial damages, including but not limited to loss of pay, past, and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment, physical harm, damage to reputation, attorney's fees, costs and any other damages allowable under the ADEA.

91.   The acts mentioned above of the Defendant, individually and by and through its agents, were intentional, willful and wanton, malicious and oppressive, and in total disregard and reckless indifference to the Plaintiff's rights under the ADEA and justify the awarding of exemplary and liquidated damages in this cause.

92.   Plaintiff has suffered and will continue to suffer significant damages as a result of the above.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, respectfully requests judgment against Defendant, QUAKER MANUFACTURING LLC., in an amount that will fully compensate him

for his injuries and damages caused by Defendant's violation of his rights under the ADEA and award Plaintiff all allowable damages under the ADEA which may include loss of wages, past, and future, loss of future earnings, loss of career opportunities, loss of employee benefits past and future, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney's fees, punitive and liquidated damages, compensatory damages and prejudgment interest, as well as any further relief as the Court deems just and appropriate.

### COUNT VII
### COMMON LAW RETALIATION – DEFENDANT QUAKER

93.  Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

94.  At all relevant times, Plaintiff was employed as a maintenance mechanic, and competently fulfilled his duties, and was an exceptional employee.

95. On April 30, 2020, Plaintiff was discharged from employment with Defendant.

96.  Plaintiff was discharged from his position for the reasons described above, including but not limited to his race, color and age, and because he complained to his superiors at the Defendant regarding his differential treatment due to his race and age as well as due to retaliation for seeking medical care and filing a workers' compensation claim for injury to his left knee sustained at work on or about 2017 and for exercising his union rights as outlined above.

97.  After making the above-referenced complaints, Plaintiff was harassed, including but not limited to differential treatment toward Plaintiff, creation of a hostile work environment, and termination.

98.  In response to Plaintiff's intent to pursue his common law rights, he was discharged by Defendant in violation of the common law prohibition of retaliatory discharge.

99.  Defendant discharged Plaintiff in violation of the clear mandate of his federally and state-protected rights to equal treatment in the workplace under the ADEA,  TITLE VII, and The Illinois WORKERS' COMPENSATION ACT. Plaintiff's discharge undermined these public policies.

100. As a result of his discharge, Plaintiff suffered from damages including but not limited to loss of salary, wages, benefits, back pay, front pay, past and future pecuniary losses, prejudgment interest,  severe emotional distress, loss of reputation, and other financial consideration as a result of his employment.

101. Defendant's actions were willful and wanton and were conducted with the intended purpose of causing harm to Plaintiff.  As such, Plaintiff is entitled to the award of punitive damages and any other damages allowable under common law retaliation.

102. The reasons set forth above were the direct and proximate cause of the Plaintiff's discharge and resulting damages.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, respectfully requests judgment against Defendant, QUAKER MANUFACTURING LLC, in an amount that will fully compensate him for his injuries and damages of the past and future, including but not limited to lost employee benefits, past and future, loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney's fees, punitive and liquidated damages, and prejudgment interest, as well as any further relief as the Court, deems just and appropriate.

**COUNT VIII**
**RETALIATION FOR SEEKING MEDICAL CARE AND FILING A WORKERS'**
**COMPENSATION CLAIM - DEFENDANT QUAKER**

103. Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

104. At all relevant times, Plaintiff was employed as a maintenance mechanic, and competently fulfilled his duties, and was an exceptional employee.

105. Plaintiff sought medical care and filed a workers' compensation claim on or about 2017 as a result of an injury to his left knee he sustained at work.

106. On April 30, 2020, Plaintiff was discharged from employment with Defendant.

107. For the reasons described above, Plaintiff was discharged from his position on April 30, 2020, in retaliation for seeking medical care and filing a workers' compensation claim for an injury to his left knee sustained at work.

108. After seeking medical care for his injury and filing his workers' compensation claim, Plaintiff was continually harassed and treated differently by Defendant in the terms, conditions, and privileges of his employment, including but not limited to differential treatment toward Plaintiff, creation of a hostile work environment, harassment and ultimately termination.

109. In response to Plaintiff seeking medical care and filing his workers' compensation claim, he was continuously harassed and ultimately was discharged by Defendant in violation of the Illinois Workers' Compensation Act, *820 ILCS 305, et. seq*. and *Kelsay v. Motorola Inc*., 74 Ill.2d 172 (1878).

110. As a direct result of Defendant's intentional and unlawful actions, Plaintiff suffered from damages and injuries of a personal, permanent and pecuniary nature, including but not limited to loss of salary, wages, benefits, back pay, front pay, past and future

pecuniary losses, prejudgment interest,  severe emotional distress, loss of reputation, and other financial consideration as a result of his employment.

111. Defendant's stated reason for Plaintiff's discharge was pretextual and offered for the sole purpose of covering up its illegitimate and unlawful discharge of Plaintiff.

112. Defendant's actions were willful and wanton and were conducted with the intended purpose of causing harm to Plaintiff.  As such, Plaintiff is entitled to the award of all applicable damages, including punitive damages and any other damages allowable.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, respectfully requests judgment against Defendant, QUAKER MANUFACTURING LLC, in an amount that will fully compensate him for his injuries and damages of the past and future, including but not limited to lost employee benefits, past and future, loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney's fees, punitive and liquidated damages, and prejudgment interest, as well as any further relief as the Court, deems just and appropriate.

## COUNT IX
## HOSTILE WORK ENVIRONMENT – DEFENDANT QUAKER

113. Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

114. By the above actions, but not limited to the same, the Plaintiff was subject to pervasive and continuous unwelcome harassment at the hands of Defendant, in the terms, conditions, and privileges of employment and in interfering with his work opportunities because of his race, color, sex, and age, in violation of Title VII and the ADEA; as well as seeking medical care and filing a workers' compensation claim and for exercising his union rights.

115. Defendant knew or should have known through Plaintiff's complaints of the aforementioned harassment and failed to take prompt remedial action to stop and correct the same.

116. By the above actions, but not limited to the same, Defendant's created an intimidating, hostile, and offensive work environment, which unreasonably interfered with Plaintiff's work performance, work opportunities, and severely affected his psychological well-being.

117. Due to its inaction, Defendant condoned and ratified the aforementioned unlawful acts.

118. Defendant's wrongful acts were deliberate, intentional, willful, wanton, and malicious, and oppressive, and in total disregard and reckless indifference to Plaintiff's rights under Title VII and the ADEA.

119. As a direct and proximate result of the acts engaged in by Defendant, Plaintiff suffered severe damages, including but not limited to loss of pay, past and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings, and other incidentals and benefits of employment; severe emotional distress, humiliation, embarrassment; damage to reputation, attorneys' fees, costs and any other damages allowed under Title VII and the ADEA.

120. The acts mentioned above of Defendant were willful, wanton, malicious, and oppressive and justify the awarding of exemplary and punitive damages.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, respectfully requests judgment against Defendant, QUAKER MANUFACTURING LLC, in an amount that will fully compensate him for his injuries and damages of the past and future, including but not limited to

lost employee benefits, past and future, loss of wages, past and future, loss of future earnings, loss of career opportunities, loss of employee benefits, severe emotional distress, pain and suffering, embarrassment, humiliation, damage to reputation, court costs, the expense of litigation, expert witness fees, reasonable attorney's fees, punitive and liquidated damages, and prejudgment interest, as well as any further relief as the Court, deems just and appropriate.

## COUNT X - FIRST AMENDMENT
## 42 U.S.C. §1983 CLAIM- DEFENDANT QUAKER

121. Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

122. Plaintiff has the right to freedom of speech, freedom of association, freedom to peaceably assemble, as guaranteed by the First Amendment to the Constitution of the United States.

123. Plaintiff has engaged in First Amendment-protected activity by speaking to his coworkers in the cafeteria of Defendant's facility about what he read regarding the Covid-19 virus, the Obama administration, and Dr. Fauci.

124. Immediately following the free speech statement made by Plaintiff as outlined above, Defendant treated Plaintiff differently than other employees who did not engage in First Amendment-protected activity and who were non-politically associated.

125. Plaintiff's conversation and questioning regarding the Covid-19 virus as discussed above is constitutionally protected activity under the First Amendment.

126. Plaintiff's First Amended protected activity, and political association and exercise of his first amendment right to voice his opinion on legitimate public concerns, was a substantial motivating factor in the Defendants' harassment, defamation, and retaliation against the Plaintiff,

and their decision under false pretenses to interrogate the Plaintiff, deny him union representation and suspend and terminate his employment.

127. As a direct and proximate result of the acts engaged in by Defendants, Plaintiff was caused to suffer severe damages, including but not limited to loss of pay, past, and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe employment distress, humiliation, embarrassment; damage to reputation, attorney fees, punitive damages, costs, and other damages allowed under 42 U.S.C. §1983.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, demands judgment against Defendants, QUAKER MANUFACTURING LLC, for damages in an amount in an amount to be determined at trial, and for his costs and any additional relief this Court deems fair and just.

## COUNT XI – DEFAMATION – ALL DEFENDANTS

128. Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

129. Reynolds, between April 24, 2020, through April 30, 2020, made and published a false and defamatory statement to the other employees and coworkers at the company and Union officials that Plaintiff was guilty of being a racist and that he for certain, and without any doubt, made the racist comment that he was accused of.

130. Reynolds, between April 24, 2020, through April 30, 2020, made false and defamatory statements that Plaintiff was a racist to prospective employers of Plaintiff.

131. By its actions and inactions, Defendant Quaker ratified and adopted the false and defamatory statements made by its Human Resources Senior Manager, Defendant Susan Reynolds.

132. The statements made by Defendants were injurious to Plaintiff's reputation, character, and standing in the community amongst his peers and colleagues.

133. The statements made by the Defendants were false and known to be false by Defendants.

134. The statements made by the Defendants were made intentionally and with actual malice.

135. The statements made by the Defendants were published to third parties throughout the Defendant facility amongst Plaintiff's colleagues and coworkers and to one or more of Plaintiff's prospective employers.

136. After making and publishing these false and reckless allegations against Plaintiff, the Defendants suspended Plaintiff from his job, shut down his access to his email and voice mail, barred him from entering the facility, communicating with his colleagues, and otherwise impugned his professional character and reputation.

137.  The statements imputed Plaintiff's character and adversely reflected on Plaintiff's abilities in his profession and ability to gain future employment.

138. As a proximate result of the foregoing defamatory statements by Defendants, Plaintiff suffered injuries, including injuries to his character, reputation, and standing in the community.

139. The foregoing defamatory statements were made by Defendants,  with the knowledge of their falsity or with utter and complete reckless disregard as to the statement's truth.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, demands judgment against Defendants, QUAKER MANUFACTURING LLC, and SUSAN REYNOLDS, individually for damages in

an amount in an amount to be determined at trial, and for his costs and any additional relief, this Court deems fair and just.

## COUNT XII – FALSE LIGHT – ALL DEFENDANTS

140. Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

141. Reynolds, between April 24, 2020, through April 30, 2020, knew or should have known that she portrayed Plaintiff publicly in a false light to others within the company and to Union officials.  The false light is that Plaintiff was guilty of being a racist and that he for certain, and without any doubt, made the racist comment that he was accused of.

142. Reynolds, between April 24, 2020, through April 30, 2020, portrayed Plaintiff in a false light by stating that Plaintiff was guilty of being a racist to prospective employers of Plaintiff.

143. By its actions and inactions, Defendant Quaker ratified and adopted the portrayal of Plaintiff in a false light made by its Human Resources Senior Manager, Defendant Susan Reynolds.

144. A reasonable person of ordinary sensibilities would find that the false light of being portrayed and labeled as a racist to be highly offensive or embarrassing.

145. The Defendants acted with actual malice where they knew that the false portrayals of Plaintiff were false or made them with utter and reckless disregard as to the statements' truth.

146. As a proximate result of the foregoing actions by Defendants, Plaintiff suffered injuries, including injuries to his reputation, character, and standing in the community, and Plaintiff will continue to suffer injuries in the future.

26

WHEREFORE, Plaintiff, ROBERT A. CRAFT, demands judgment against Defendants, QUAKER MANUFACTURING LLC, and SUSAN REYNOLDS, individually for damages in an amount in an amount to be determined at trial, and for his costs and any additional relief, this Court deems fair and just.

## COUNT XIII – VIOLATION OF PLAINTIFF'S WEINGARTEN RIGHTS – ALL DEFENDANTS

147. Plaintiff repeats and reasserts the allegations of all previous paragraphs of this Complaint as this paragraph as though fully set forth herein.

148. At all relevant times, Plaintiff was a member of a union subject to a collective bargaining agreement with Defendant.

149. Plaintiff, at all relevant times, was afforded specific rights as outlined in the 1975 United States Supreme Court case, *NLRB v. Weingarten Inc*., 420 U.S. 251 (1975).

150. By the above actions or inactions of Defendants, by and through its agent, Defendant SUSAN REYNOLDS, Plaintiff's Weingarten rights were violated.

151. By its actions and inactions, Defendant Quaker ratified and adopted the violations of Plaintiff's Weingarten rights made by its Human Resources Senior Manager, Defendant Susan Reynolds.

152. By the above actions or inactions of Defendants, Plaintiff was required to explain or defend his conduct in a situation where he reasonably feared could affect his working conditions or job security at Defendant.

153. Plaintiff requested union representative at the meeting of April 24, 2020, and the same was denied by Defendants.

154. The April 24, 2020 interview led to and formed the basis of Plaintiff's termination.

155. As a direct and proximate result of the acts engaged in by Defendants, Plaintiff was caused to suffer severe damages, including but not limited to loss of pay, past, and future, loss of benefits, past and future, loss of career opportunities, loss of future earnings and other incidentals and benefits of employment; severe employment distress, humiliation, embarrassment; damage to reputation, attorney fees, punitive damages, costs, and other damages.

WHEREFORE, Plaintiff, ROBERT A. CRAFT, demands judgment against Defendants, QUAKER MANUFACTURING LLC, and SUSAN REYNOLDS, individually for damages in an amount in an amount to be determined at trial, and for his costs and any additional relief this Court deems fair and just.

### PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully Submitted,
**ROBERT A. CRAFT**

By:  /s/John C. Kreamer
One of his Attorneys

John C. Kreamer, #6270111
Joseph E. Urani #6278626
Kreamer Law Group, LLC
1100 E. Warrenville Rd.
Suite 135
Naperville, IL  60563
(p) (630) 995-3668/ (f) (630) 597-9532