IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT A. CRAFT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:21-cv-03098-SEM-TSH |
| | ) |
| QUAKER MANUFACTURING LLC, | ) Judge Sue E. Myerscough |
| and SUSAN REYNOLDS, individually, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

Defendants, Quaker Manufacturing LLC ("Quaker") and Susan Reynolds ("Reynolds") (collectively "Defendants"), by and through their attorneys, respectfully submit their Memorandum of Law in Support of Their Motion to Dismiss the Complaint and, in support thereof, states as follows.

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** .................................................................................................. 1 | |
| **II.** | **BACKGROUND FACTS** ...................................................................................... 2 | |
| | A. | Relevant Facts Taken From The Complaint ............................................. 2 |
| | B. | Relevant Facts Taken From The Collective Bargaining Agreement ....... 4 |
| **III.** | **ARGUMENT** ......................................................................................................... 5 | |
| | A. | Legal Standards Applicable To Rule 12 Motions ..................................... 6 |
| | B. | Counts XI (Defamation), XII (False Light), And (XIII) (Weingarten) Should Be Dismissed Pursuant To Rule 12(b)(1) Because The Court Lacks Jurisdiction Over Preempted Employee's Claims Requiring The Interpretation Of Provisions Within A Collective Bargaining Agreement Or Claims That Are Within The Exclusive Jurisdiction Of The NLRB ................. 7 |
| | C. | EEO Counts I Through VI And IX Should Be Dismissed Pursuant To Rule 12(b)(6) For Failure To State Plausible Claims ...................................... 9 |
| | D. | Count VII And Count IX Should Be Dismissed Pursuant To Rule 12(b)(6) Because Illinois Does Not Recognize Common Law Retaliation On The Bases Of Race, Color, Age, Seeking Medical Care And/Or Exercising Union Rights ............................................................................................. 11 |
| | E. | Count VIII Should Be Dismissed Pursuant To Rule 12(b)(6) Because Plaintiff Failed To Plead Plausible Facts Establishing Causation .......... 13 |
| | F. | Count X (Section 1983 – First Amendment) Should Be Dismissed Pursuant To Rule 12(b)(6) Because Constitutional Constraints Do Not Apply To Private Employers ....................................................................... 13 |
| | G. | Counts XI And XII Should Be Dismissed Pursuant To Rule 12(b)(6) Because Discussions Among Quaker And Plaintiff's Agents Are Not Public Disclosures And Reynolds' Alleged Opinions Cannot Form The Basis For Plaintiff's Tort Claims .............................................................. 14 |
| **IV.** | **CONCLUSION** ..................................................................................................... 15 | |

**I.    INTRODUCTION**

In his thirteen (13) count Complaint, Plaintiff Robert Craft ("Plaintiff") asserts largely duplicative and conflated theories of recovery for the following claims: (i) alleged race, gender, and age discrimination, which includes an offensive work environment, and retaliation under Title VII and the ADEA (Counts I – VI); (ii) alleged common law retaliation on the bases of EEO status, *i.e.*, being a Caucasian male who is over the age of 50, seeking medical care for a workplace injury, filing a workers' compensation claim, and exercising union rights (Count VII); (iii) alleged retaliation for seeking medical care and filing a workers' compensation claim (Count VIII); (iv) alleged hostile work environment on the bases of EEO status, *i.e.*, being a Caucasian male who is over the age of 50, seeking medical care for a workplace injury, filing a workers' compensation claim, and exercising union rights (Count IX); alleged violations of rights secured by the First Amendment – Section 1983 (Count X); (v) alleged defamation and related placement in a false light (Counts XI – XII); and (vi) alleged violations of Weingarten rights (Count XIII).

Certain of the claims set forth in the Complaint are ripe for dismissal pursuant to Rule 12(b)(1) because this Court does not have jurisdiction over: (i) alleged unlawful labor practices prohibited by the National Labor Relations Act; and (ii) an employee's private claims that require the interpretation of rights and obligations flowing from a collective bargaining agreement subject to Section 301 of Labor Management Rights Act ("LMRA"). The remaining claims set forth in the Complaint are ripe for dismissal pursuant to Rule 12(b)(6) because, despite submitting a 28-page, 155 paragraph Complaint, Plaintiff has failed to allege facts which, if accepted as true, would plausibly entitle him to relief.

## II.     BACKGROUND FACTS

### A.     Relevant Facts Taken From The Complaint[1]

#### 1.     The Parties

Quaker Manufacturing, LLC ("Quaker") is a corporation doing business in the State of Illinois. (Cmplt., ¶ 5)[2] Individual Defendant Susan Reynolds ("Reynolds") is Quaker's Human Resources Senior Manager at Quaker's worksite located in Danville, Illinois (the "Plant"). (Cmplt., ¶ 6)

Plaintiff is a fifty-six year old Caucasian male, and Quaker hired Plaintiff as a Maintenance Mechanic at the Plant. (Cmplt., ¶¶ 3, 4, 24) Plaintiff was hired by Quaker in December 2014; therefore, he was already about 50 years old when Quaker initially hired him. (Cmplt., ¶ 10) At all times relevant to this litigation, Plaintiff was a member of a union, and his employment/labor relations rights were subject to a collective bargaining agreement between Quaker and Plaintiff's union. (Cmplt., ¶ 148)

#### 2.     The Inappropriate Comment About President Obama

On or about April 24, 2020, Plaintiff arrived to work approximately 30 minutes prior to the start of his work shift and joined two co-workers for a conversation in the work cafeteria. (Cmplt., ¶ 13). According to Plaintiff, he had recently read an article indicating that the Obama Administration and Dr. Fauci had sent funding to Wuhan, China, to develop a certain virus. (Cmplt., ¶ 14). Plaintiff claims to have told his two co-workers that Dr. Fauci and the Obama Administration could be in a lot of trouble or should "both be hung out to dry" if they played a role in helping to create COVID-19. (Cmplt., ¶ 15)

---

[1] Defendants accept that the well-pled allegations in the Complaint are taken as true solely for purposes of this Motion to Dismiss. Should this matter proceed beyond the pleading stages, Defendants reserve the right to make factual challenges to the allegations set forth in the Complaint.

[2] This Court may also take judicial notice of Quaker's corporate records maintained by the Illinois Secretary of State: https://apps.ilsos.gov/corporatellc/CorporateLlcController.

2

A Plant employee sitting at a different table reported to Human Resources that Plaintiff had said "Obama should have been hung from a tree." (Cmplt., ¶ 16) That same day, Reynolds went to Plaintiff's work area and asked to speak with him. (Cmplt., ¶ 17) According to Plaintiff, he asked to be able to call a union steward prior to the start of the meeting, but Reynolds told him that it would not be necessary since Plaintiff was not in trouble. (Cmplt., ¶ 17) Also according to Plaintiff, Reynolds denied Plaintiff's repeated request for a union steward and failed to advise Plaintiff of his right to either speak without a union steward or to end the conversation. (Cmplt., ¶ 18) Plaintiff states that he denied saying he wanted to "hang President Obama from a tree" when asked by Reynolds, and that he told Reynolds he would apologize to anyone who had misinterpreted his comments. (Cmplt., ¶ 21, 23) Plaintiff avers that once the conversation ended, he then complained to Reynolds that he believed that Reynolds immediately presumed he must be racist because he is a Caucasian, white male over the age of 50, and that he believed the investigation itself was a violation of his rights. (Cmplt., ¶ 24)

### 3. Plaintiff Is Suspended And Subsequently Discharged

On April 27, 2020, Plaintiff was placed on a suspension pending the outcome of the investigation. (Cmplt., ¶ 25) According to Plaintiff, upon being advised of his suspension, he again complained to Reynolds that he believed that Reynolds immediately presumed he must be racist because he is a Caucasian, white male over the age of 50, that he believed the investigation was a violation of his rights, and that he believed his suspension was in retaliation for making these complaints. (Cmplt., ¶ 25) Plaintiff has also alleged that he advised Reynolds and his supervisors that he believed his suspension was tied to his request for union representation, for seeking medical care for an injury he sustained three years earlier (in 2017) and because of his pending workers' compensation claim that he filed in 2017. (Cmplt., ¶ 26, 27) On April 30, 2020, Plaintiff was discharged. (Cmplt., ¶ 28)

3

### 4. Discussions Among Quaker Decision-Makers And With Plaintiff's Union Agents

Between April 24, 2020 and April 30, 2020, Reynolds discussed this matter with her direct supervisor, the Head of Human Resources, the Plant Manager, the Superintendent of the Maintenance Department, and the Maintenance Manager. (Cmplt., ¶ 35) Reynolds also discussed this matter with Plaintiff's statutory agents, the Vice President of the Union and the Secretary of the Union. (Cmplt., ¶ 35) Plaintiff alleges that, during these discussions, Reynolds made "false and defamatory statements being that Plaintiff was guilty of being a racist and that he for certain, and without any doubt, made the racist comment that he was accused of." (*Id.*)

## B. Relevant Facts Taken From The Collective Bargaining Agreement

In the Complaint, Plaintiff (i) refers to his union status and union rights more than 15 times, (ii) based Counts VII, IX, and XIII in whole, or in part, on his union status/rights, and (iii) based Counts XI and XII in part on conversations between Quaker and his union officials. (*See* Cmplt.) Even though the collective bargaining agreement was not referenced in, or attached to, the Complaint, the Seventh Circuit has authorized the consideration of such documents on a Rule 12(b)(6) motion to dismiss. *See Minch v. City of Chicago*, 486 F.3d 294, 300, n.3 (7th Cir. 2007) ("As it happens, the complaint in this case neither quoted from nor referred to the collective bargaining agreement; no mention of the CBA was made at all. Yet, there is no question that the Plaintiffs' due process claim rests on the terms of the CBA."). Thus, this Court may consider Defendants' facts arising under the CBA because Plaintiff's defamation and false light claims rest on discussions that were mandated by the CBA. For example, the CBA's grievance procedure mandated that Quaker contact the union when it formally disciplined a unionized worker:

4

## ARTICLE VII

### Conflict/Issue Resolution & Grievance Procedure

**Grievance For Discharged Employee - 7.03**. When an employee holding seniority is discharged the Company will notify a Union official. The outlined grievance procedure shall be available to any discharged employee or any employee who has been suspended for disciplinary reasons . . . It is understood that employees may be placed on an indefinite suspension during the investigatory process.

Exhibit A, CBA (excerpt); *see also* **7.01(d)** (requiring Quaker and the Union to discuss grievance/arbitration issues associated with unpaid suspensions); **1.01(b)(5)** (management right to suspend, discipline or discharge employees); **1.01(b)(6)** (management right to determine work rules).

Thus, Quaker's exercise of management rights flowing from the CBA authorized Quaker's agents to discuss discipline and work rules that directly concern this matter and, in compliance with the CBA, Quaker did not have the discretion to not contact Plaintiff's statutory representatives to discuss the discipline issued to Plaintiff. (*See* Exhibit A)

### III.    ARGUMENT

As a threshold matter, the 13-Count Complaint contains duplicative claims and often conflates different causes of action and legal theories within a single count. *See* Cmplt., generally. For the Court's convenience, this Memorandum of Law will refer to Counts in the Complaint for identification purposes but will focus on the specific claims at issue in moving for dismissal. *See I.B. of T. Union Local No. 710 Pension Fund v. Flynn*, No. 17-cv-05532, 2019 U.S. Dist. LEXIS 45712, at* n.4 (N.D. Ill. March 20, 2019) (holding that Rule 12 allows defendants to challenge the appropriateness of claims, not counts).

### A. Legal Standards Applicable To Rule 12 Motions

#### 1. Standards Applied In Considering Rule 12(b)(1) Challenges.

Subject matter jurisdiction is an issue that should be resolved early. *See United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (*en banc*), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 852 (7th Cir. 2012). In considering motions filed pursuant to Rule 12(b)(1), the court may look beyond the face of the complaint. *See Palay v. United States*, 349 F.3d 418, 424-25 (7th Cir. 2003). In adjudicating a Rule 12(b)(1) motion, a court may weigh the evidence to determine whether jurisdiction has been established. *See United Phosphorous*, 322 F.3d at 946. Therefore, "[o]n a motion to dismiss for lack of subject matter jurisdiction, the court is not bound to accept the truth of the allegations in the complaint, but may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt." *Bastien v. AT & T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000). The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *See United Phosphorous*, 322 F.3d at 946.

#### 2. Standards Applied In Considering Rule 12(b)(6) Challenges

When reviewing a 12(b)(6) motion, the court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff, but the court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The well-pled allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere &*

6

*Co.*, 556 F.3d 575, 580 (7th Cir. 2009). To be facially plausible, the complaint must contain sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> **B.** **Counts XI (Defamation), XII (False Light), And (XIII) (Weingarten) Should Be Dismissed Pursuant To Rule 12(b)(1) Because The Court Lacks Jurisdiction Over Preempted Employee's Claims Requiring The Interpretation Of Provisions Within A Collective Bargaining Agreement Or Claims That Are Within The Exclusive Jurisdiction Of The NLRB**

Plaintiff's defamation claim is based upon Reynolds' investigation into reported workplace misconduct and her related communications with Quaker decisionmakers and Plaintiff's union officials. *See* Cmplt., ¶¶ 15-17, 19, 35.[3] Plaintiff implicitly concedes that Reynolds' investigation was a formal part of the disciplinary process for labor relations in complaining about the alleged denial of his labor right to representation during his investigatory meeting with Reynolds. *See* Cmplt., ¶ 24.

Plaintiff's defamation claim should be dismissed because the defamation claim is "based on facts inextricably intertwined with the grievance machinery of the collective bargaining agreement." *Scott v. Machinists Automotive Trades Dist. Lodge No. 190*, 827 F.2d 589, 594 (9th Cir. 1986) (citing *Magnuson v. Burlington N., Inc.*, 576 F.2d 1367, 1369 (9th Cir.)); *see also Green v. Hughes Aircraft Co.*, 630 F. Supp. 423, 426-27 (S.D. Cal. 1985) (defamation claim not actionable because the statements were made and published within the investigatory process and thus were central to the rights, obligations, and procedures under the CBA). Similarly, in *Evans v. Keystone Consolidated Industries*, 884 F. Supp. 1209 (C.D. Ill. 1995), the Court, positively citing *Scott*, recognized that the weight of authority holds that statements made "within the

---

[3] Because Plaintiff also alleged that Reynolds made defamatory comments to prospective employers, Defendants will address the insufficiency of Plaintiff's defamation and false light claims in their 12(b)(6) discussions, *infra*.

context of a formal grievance procedure" cannot serve as the basis for defamation claims in allowing statements outside of that formal context to be litigated. *Id*. at 1216; *see also Kimbro v. Pepsico, Inc*., 215 F.3d 723 (7th Cir. 2000). Because the allegedly defamatory comments were allegedly issued during the formal disciplinary and grievance processes, the defamation claim must fail.

"Due to the similarities between [defamation and false light] torts, certain restrictions and limitations on actions for defamation may be equally pertinent to claims for false-light invasion of privacy." *See, e.g., Schaffer v. Zekman*, 196 Ill. App. 3d 727, 734 (1st Dist. 1990); *Harte v. Chicago Council of Lawyers*, 220 Ill. App. 3d 255, 263 (1st Dist. 1991). Thus, Plaintiff's false light claim fails for the same reasons as his defamation claim.

Finally, Plaintiff's claim that he was denied union representation during the investigatory meeting (Count XIII), if true, would constitute an unfair labor practice. *See NLRB v. Weingarten Inc*., 420 U.S. 251 (1975). However, this Court cannot provide Plaintiff a remedy for an unfair labor practice because "an employee is limited under the NLRA to filing a complaint with the NLRB for any unfair labor practice which might exist. The NLRB has exclusive jurisdiction 'to find, prevent, and rectify unfair labor practices.'" *Whitney v. Chicago Transit Authority*, No. 87-cv-1082, 1987 U.S. Dist. LEXIS 4564, at *4 (N.D. Ill. June 3, 1987) ("[T]his Court has no subject matter jurisdiction over any unfair labor practice charges in [Plaintiff's] complaint."); *see also Allis-Chalmers Corp. v. Lueck*, 105 S. Ct. 1904, 1912-13 (1985) (no balancing test is to be performed where congress has provided that federal law must prevail). This claim should be dismissed.

    **C.**    **EEO Counts I Through VI And IX Should Be Dismissed Pursuant To Rule 12(b)(6) For Failure To State Plausible Claims**

        **1.**    **Plaintiff's Discharge Claims On The Bases Of Race, Color, Gender And Age Are Not Plausible**

Long before *Twombly* and *Iqbal* were decided and mandated plausible pleading standards, the Seventh Circuit recognized that "if a plaintiff does plead particulars, and they show that he has no claim," then he has pled himself out of court. *Thomas v. Farley*, 31 F.3d 557, 558 (7th Cir. 1994). Here, Plaintiff has pled additional facts beyond those required for a discrete discharge claim, as the face of the Complaint confirms that: (i) Plaintiff is a fifty-six year old Caucasian male, and Quaker hired Plaintiff in December 2014 when he was already 50 years old (*see* Cmplt., ¶¶ 3, 4, 10, 24); (ii) a Plant employee reported to Human Resources that Plaintiff had said "Obama should have been hung from a tree" (*see* Cmplt., ¶ 16); (iii) that same day, Reynolds conducted an investigation and interviewed Plaintiff as part of that investigation process (*see* Cmplt., ¶ 17); (iv) Plaintiff denied making the comment and only allegedly complained about his EEO concerns after he was already the subject of an EEO complaint (*see* Cmplt., ¶¶ 21-24). These conceded facts establish that Plaintiff's EEO status played no role in his discharge. Plaintiff's conclusory, unsupported allegation that Quaker engaged in pretextual decision-making is not to be accepted as true. Dismissal is appropriate.

        **2.**    **Plaintiff's Hostile Work Environment Claims (Counts I, III, and IX) On The Bases Of Race, Color, and Gender Are Not Plausible**

The 28-page, 155 paragraph Complaint filed by Plaintiff does not contain a single factual allegation which, if accepted as true, would establish that Plaintiff has pled a plausible hostile work environment claim based on severe or pervasive conduct that was directed at his EEO status. In *Watkins v. City of Chi.*, No. 17-cv-2028, 2018 U.S. Dist. LEXIS 93875 (N.D. Ill. June 5, 2018), the Court granted the employer's motion to dismiss the hostile work claims because the

claim was largely supported by conclusory allegations, the conduct complained of (being subjected to teasing) was neither race nor gender based, and the alleged conduct did not constitute severe or pervasive conduct sufficient to withstand a motion to dismiss. *Id*. at *21-22 ("Title VII is not a 'general civility code;' only harassment severe enough to render the work environment abusive is actionable.").

Here, Plaintiff has advanced only boilerplate, conclusory, and duplicative allegations that, based on his race, color, and gender, he was subjected to "an intimidating, hostile, and offensive work environment, which unreasonably interfered with his work performance, and severely affected his psychological well-being (*see* Cmplt., ¶¶ 46, 63)" and that "the Plaintiff was subject to pervasive and continuous unwelcome harassment at the hands of Defendant, in the terms, conditions, and privileges of employment and in interfering with his work opportunities because of his race, color, sex, and age." *See* Cmplt., ¶ 114. Plaintiff's conclusory, unsupported allegations covering a timeframe of one (1) week are not severe or pervasive and are not to be accepted as true. *See Brooks*, 578 F.3d at 581. Dismissal is appropriate.

        **3.**        **Plaintiff's Retaliation Claims On The Bases Of Race, Color, Gender And Age Are Not Plausible**

Even putting aside the issue of Plaintiff's alleged protected activity first reportedly occurring when he was already the subject of an EEO investigation and subsequently when he was placed on indefinite suspension and terminated (*see* Cmplt., ¶¶ 24, 26, 29), Plaintiff has pled himself out of Court by conceding that: (i) a Plant employee reported to Human Resources that Plaintiff had said "Obama should have been hung from a tree" (*see* Cmplt., ¶ 16); (ii) that same day, Reynolds conducted an investigation and interviewed Plaintiff as part of that process (*see* Cmplt., ¶ 17); and (iii) Plaintiff denied making the comment and only complained about EEO matters after he was already the subject of an EEO complaint (*see* Cmplt., ¶¶ 21-24).

10

In *Lance v. Betty Shabazz International Charter School*, the complaining employee, like Plaintiff here, voluntarily alleged in the complaint the facts surrounding his employer's discharge decision. No. 2014 U.S. Dist. LEXIS 10972, at *34-35 (N.D. Ill. Jan. 29, 2014). As was the case in *Lance*, the allegations in the Complaint do not survive a motion to dismiss because they "do not support a plausible retaliation claim under a but-for causation standard." *Id.*; *see also*, *Khuans v. School Dist. 110*, 123 F.3d 1010, 1016 (7th Cir. 1997) (the district court erred by not granting the motion to dismiss where the complaint allegations confirmed the application of the defendant's qualified immunity defense and holding that: "This is a case where a plaintiff, by pleading too much, has pled herself out of court). The bottom line is that Plaintiff has alleged facts showing that his claims of discrimination, harassment and retaliation are not plausible, and should therefore be dismissed.

    **D.    Count VII And Count IX Should Be Dismissed Pursuant To Rule 12(b)(6) Because Illinois Does Not Recognize Common Law Retaliation On The Bases Of Race, Color, Age, Seeking Medical Care And/Or Exercising Union Rights[4]**

Plaintiff's common law retaliatory discharge claim based on his EEO status, seeking of medical care and/or exercising union rights (Count VII), and his similar common law *hostile work environment* claims for seeking medical care, filing a workers' compensation claim, and exercise of union rights (Count IX), should be dismissed because Illinois common law retaliation claims are limited to whistleblower discharge claims and retaliatory discharge claims. *See, e.g.*, *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181 (1978) (establishing worker's compensation

---

[4] Count VII also asserts a common law retaliatory discharge claim for filing a workers' compensation claim. This allegation is addressed in Sub-Section (E), *infra* (concerning the dismissal of Count VIII). Given the 155 paragraphs and 13 separate counts set forth in the 28-page Complaint, dismissing this portion of Count VII as duplicative would be an effective form of house cleaning. *See Pumputiena v. Deutsche Lufthansa, AG*, No. 14-cv-4868, 2017 U.S. Dist. LEXIS 1991, at *17 (N.D. Ill. Jan. 6, 2017) ("Although dismissing a duplicative claim has no substantive impact—after all, a plaintiff generally can recover only once for any particular injury, no matter how many claims or counts concerning that injury are alleged—the complaint here is so verbose that eliminating duplication would have some benefit.").

exception); *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 133 (1981) (establishing whistleblowing exception).

In *Langford v. County of Cook*, 965 F. Supp. 10191 (N.D. Ill. 1997), the Court refused to expand the common law tort of retaliatory discharge to cover an employee's attempt to get disability benefits because that allegation did not directly concern a request for workers' compensation benefits. *Id*. at 1100 ("This Court is bound to honor the determination of Illinois to limit public policy exceptions to the at-will doctrine to those already identified in *Kelsay* and *Palmateer*."). Thus, in Illinois, there does not exist a cognizable claim for retaliatory discharge for seeking of medical care and/or exercising union rights. Nor does there exist in Illinois cognizable claims for harassment based on seeking medical care, filing a workers' compensation claim, and/or the exercise of union rights.

With respect to Plaintiff's common law discharge and retaliation claims related to his EEO status, the Illinois Human Rights Act provides "a comprehensive scheme of remedies and administrative procedures for redress of civil rights violations." *Veazey v. LaSalle Telecommunications, Inc*., 334 Ill. App. 3d 926, 933 (2002). The following limitation provision is contained in the Illinois Human Rights Act and bars any common law claim based on the same subject matter: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D); *see also Corluka v. Bridgford Foods*, 284 Ill. App. 3d 190, 194 (1996) (common law retaliatory discharge claim preempted by the IHRA). Therefore, these claims should be dismissed.

### E. Count VIII Should Be Dismissed Pursuant To Rule 12(b)(6) Because Plaintiff Failed To Plead Plausible Facts Establishing Causation

In his Complaint, Plaintiff confirmed that he filed his workers' compensation claim in 2017, yet he alleges that he was subjected to a common law retaliatory discharge in 2020. *See* Cmplt., ¶ 27. The Complaint is devoid of any causational facts which, if accepted as true, would establish a plausible workers' compensation retaliation claim. As the Seventh Circuit has explained, "[t]he element of causation in retaliatory-discharge law does most of the work of separating lawful discharges from unlawful retaliatory discharges." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 768 (7th Cir. 2013). Courts within this judicial district have not hesitated to grant Rule 12(b)(6) motions in cases where the complaint failed to allege plausible facts to show causation where there existed multi-year gaps between the filing of a workers' compensation claim and employee's discharge. *See, e.g.*, *Strong v. Quest Diagnostics Clinical Labs., Inc.*, No. 19-cv-4519, 2021 U.S. Dist. LEXIS 19564, at* 21-22 (N.D. Ill. Feb. 2, 2021) (motion to dismiss granted - no causation plead where there was a 3.5 year gap); *Juszczak v. Blommer Chocolate Co.*, No. 97-cv-9000, 1999 U.S. Dist. LEXIS 17230, at *28-29 (N.D. Ill. Sept. 30, 1999) (motion to dismiss granted - no causation plead where there was a 6 year gap). Because the Complaint is devoid of a nexus to establish plausible causation, dismissal is appropriate.

### F. Count X (Section 1983 – First Amendment) Should Be Dismissed Pursuant To Rule 12(b)(6) Because Constitutional Constraints Do Not Apply To Private Employers

Plaintiff's Section 1983 claim for free speech protection (discrimination) in the workplace should be dismissed because constitutional constraints apply to public sector employers, not corporations such as Quaker. *See, e.g.*, *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 420 (7th Cir. 1988) ("private employers are not subject to the [First Amendment]"); *Kelso-Burnett Co.*, 106 Ill. 2d 520, 526-27 (1985) (holding that First Amendment claims may not

13

be pursued against private employer because constitutional guarantee of free speech only protects against infringement by the government). Dismissal is appropriate.

> **G.  Counts XI And XII Should Be Dismissed Pursuant To Rule 12(b)(6) Because Discussions Among Quaker And Plaintiff's Agents Are Not Public Disclosures And Reynolds' Alleged Opinions Cannot Form The Basis For Plaintiff's Tort Claims**

In addition to the jurisdictional/preemption arguments discussed above in Sub-section (B), Plaintiff's defamation and false light claims against Defendants are ripe for dismissal because the Complaint clearly sets forth that Reynolds, who is an agent for Quaker, had the alleged communications with the Head of Human Resources, the Plant Manager, the Superintendent of the Maintenance Department, and the Maintenance Manager, who were also Quaker's agents in this disciplinary matter. *See Vulcan Basement Waterproofing of Ill., Inc. v. NLRB*, 219 F.3d 677, 686 (7th Cir. 2000) (finding that supervisory personnel, even if not the decisionmakers, are agents of the employer in an unfair labor practice charge regarding discipline). Thus, Plaintiff has not sufficiently alleged the disclosure of false statements about Plaintiff to *third parties*. Similarly, Reynolds alleged communications with Plaintiff's union officials were not public disclosures to third parties because the union officials were Plaintiff's agents in this matter. *See Bell v. Vill. of Streamwood*, 806 F. Supp. 2d 1052, 1055-056 (N.D. Ill. 2011) (recognizing Illinois' agent-union member privilege in a disciplinary matter).

Finally, Reynolds' alleged comments, *i.e.*, that "Plaintiff was guilty of being a racist" and that "he for certain, and without any doubt, made the racist comment that he was accused of," to alleged prospective employers are nothing more than alleged opinions, which are non-actionable, and the alleged context for those alleged opinions. As such, the alleged comments are not actionable as defamation or false light claims. For example, in *Stevens v. Tillman*, the following comments, and context for those comments, were affirmed by the Seventh Circuit as protected

opinions, not actionable defamation, on a motion to dismiss: "We found in our investigation that our principal must be removed. . . . Our principal is very insensitive to the needs of our community, which happens to be totally black. She made very racist statements during the boycott. She is a racist. She must go. We cannot have racist people around our children. . . . She made numbers of very racist statements, so many that I would use all of my time to explain to you some of the statements that were made. Our children are afraid of her." 855 F.2d 394, 400 (7th Cir. 1988) (affirming the motion to dismiss ruling). Plaintiff's defamation and false light claims should be likewise dismissed as a matter of law.

## IV.     CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed in its entirety.

Date: July 19, 2021                                  QUAKER MANUFACTURING LLC and
                                                     SUSAN REYNOLDS

                                                     By:     /s/ Brian K. Jackson
                                                             One of Their Attorneys

Brian K. Jackson (6286470)
Laner Muchin, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60654
(312) 467-9800 / (312) 467-9479 (fax)
bjackson@lanermuchin.com

15

**CERTIFICATE OF SERVICE**

I, Brian K. Jackson, an attorney, hereby certify that on July 19, 2021, I caused a copy of the foregoing **Defendants' Motion to Dismiss the Complaint,** in the above-captioned matter to be filed with the Clerk of the District Court and served on the parties of record, including those listed below, by operation of the Court's CM/ECF electronic filing system, addressed to:

> John C. Kreamer
> Joseph E. Urani
> Kreamer Law Group, LLC
> 1100 E. Warrenville Rd., Suite 135
> Naperville, IL 60563
> (p) (630) 995-3668/ (f) (630) 597-9532

/s/ Brian K. Jackson

Brian K. Jackson
Laner Muchin, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60610
(312) 467-9800
(312) 467-9479 (fax)