# CONTENTS

| Section | Topic | Page |
|---|---|---|
| | Preamble | 1 |
| | Witnesseth | 1 |
| | Danville Plant Vision, Mission | 2 |
| | Danville Plant Guiding Principles | 2 |

**Article I - Commitments, Responsibilities, Recognition and Union Security:**

| Section | Topic | Page |
|---|---|---|
| 1.01 | Joint Leadership Commitment | 4 |
| 1.01 (a) | Employee Responsibilities | 4 |
| (b) | Company Responsibilities | 5 |
| (c) | Union Responsibilities | 6 |
| 1.01 (d) | Union Steward & Company Supervisor Responsibilities | 7 |
| 1.02 | Covered & Excluded Employees | 7 |
| 1.02 (a) | Union Membership | 8 |
| (b) | Union Dues | 8 |
| (c) | Union Dues Form | 9 |
| 1.03 | Non-Discrimination | 9 |
| 1.04 | Non-Performance/Performance of Bargaining Unit Work | 9 |

**Article II - Seniority:**

| Section | Topic | Page |
|---|---|---|
| 2.01 | Probationary Employees | 9 |
| 2.02 | Completion of Probationary Period | 10 |
| 2.02 (a) | Plant-Wide Seniority Definition | 10 |
| (b) | Departmental Seniority Definition | 10 |
| (c) | New Hire Job Qualification | 10 |
| 2.03 | Reduction in Work Force-Plant | 11 |
| 2.03 (a) | Reduction 2 days or Less | 11 |
| (b) | Reduction 2 days or More | 11 |
| (c) | Volunteer Layoff | 11 |
| 2.04 | Reduction in Work Force-Dept. | 11 |
| 2.04 (a) | Elimination of Production Line or Department | 12 |
| 2.05 | Reduction in Work Force-Job | 12 |
| 2.05 (a) | Movement Between Schedules | 13 |
| 2.06 | Business Inventory Shutdown | 13 |
| 2.07 | Recall from Layoff | 13 |
| 2.08 | Layoff/Transfer/Recall Qualifications | 13 |
| 2.09 | Regular Job/Department Definition | 14 |
| 2.10 | Temporary Transfer | 14 |

Exhibit A

| | | |
|---|---|---|
| 2.11 | Temporary Transfer Limit | 14 |
| 2.11 (a) | Return to Work Policy – Restricted Duty | 15 |
| 2.12 | Job Not Rebid - Union Notification | 15 |
| 2.12 (a) | Temporary /Experimental Bidding Procedure | 15 |
| (b) | Temporary Bidding for Special Projects, LOA, LTD, etc. | 16 |
| 2.13 | Permanent Bidding Procedure | 16 |
| 2.13 (a) | Posted Thursday 9am, removed 9am Tuesday. Job Decision Form | 16 |
| (b) | Bidding – absence | 17 |
| (c) | No Bidders | 18 |
| (d) | Bidding Limitations | 18 |
| 2.14 | Mechanic Bidding Procedure | 19 |
| 2.14 (a) | Mechanic Job Vacancy | 19 |
| (b) | Mechanic Work Assignment Limitations | 19 |
| 2.15 | Mechanic Apprenticeship Program | 19 |
| 2.15 (a) | Mechanic Apprenticeship Selection | 19 |
| (b) | Mechanic Apprenticeship New Job Bidding | 19 |
| 2.16 | Employee Disqualification | 20 |
| 2.17 | Departmental Alignment | 20 |
| 2.18 | Shift Preference | 20 |
| 2.18 (a) | Weekly Shift Trades | 20 |

**Article III - How Seniority is Lost:**

| | | |
|---|---|---|
| 3.01 | How Seniority is Lost | 21 |
| 3.01 (a) | Voluntary Termination | 21 |
| (b) | Employee Discharge | 21 |
| (c) | Absence | 21 |
| (d) | Recall from Layoff | 21 |
| (e) | Retirement | 22 |
| (f) | Extended Absence | 22 |
| (g) | New Employment | 22 |
| (h) | Other Provisions | 22 |

**Article IV - Leaves of Absence:**

| | | |
|---|---|---|
| 4.01 | Leave of Absence Provisions | 23 |
| 4.01 (a) | Union/Public Office Leave | 23 |
| 4.02 | Retainment of Seniority Rights | 23 |
| 4.03 | Military Leave | 23 |
| 4.04 | Jury Duty | 23 |

| | | |
|---|---|---|
| 4.05 | Bereavement Leave | 24 |
| 4.05 (a) | C-12 Bereavement Leave | 24 |
| **Article V - Hours of Work and Overtime:** | | |
| 5.01 | Work Day/Work Week | 24 |
| 5.01 (a) | Schedules for the Plant | 25 |
| (b) | C-8 Work Schedule | 25 |
| 5.02 | Start Time - Weekends/Holidays | 26 |
| 5.03 | Premium Pay – 5x8 | 26 |
| 5.03 (a) | Double Time Pay – 5x8 | 26 |
| 5.04 | Premium Pay C-12 Holiday | 26 |
| 5.04 (a) | Premium Pay C-12 | 26 |
| (b) | 8-Hour Continuous Schedule Pay | 27 |
| (c) | Overtime Calculation – Excused Absence | 27 |
| 5.05 | Holidays | 27 |
| 5.05 (a) | Holiday Pay 5 x 8 Schedule | 27 |
| (b) | Holiday Pay C-12 Schedule | 27 |
| (c) | Alternate Holiday Pay C-12 Schedule | 28 |
| (d) | Holiday Pay | 28 |
| 5.06 | Daily/Weekly Overtime | 28 |
| 5.07 | Premium Pay | 29 |
| 5.08 | Work Week other than Mon.-Fri. | 29 |
| 5.09 | Report In Pay | 29 |
| 5.09 (a) | Error in Schedule | 30 |
| 5.10 | Call In | 30 |
| 5.11 | Overtime/Premium Pay Calculation | 30 |
| 5.12 | Overtime Assignment | 30 |
| 5.12 (a) | Overtime Before/After Shift | 31 |
| (b) | Department/Shift Involved | 32 |
| (c) | Overtime Errors | 32 |
| (d) | Overtime Sign Up Procedure Daily/Weekend Overtime | 32 |
| (e) | Weekend Overtime Assignment | 33 |
| (f) | Offsite Meetings | 36 |
| (g) | Weekend Overtime Scheduling if Off-Site | 36 |
| (h) | Scheduling Overtime Procedure | 36 |
| | Overtime Assignment Memorandum | 37 |
| 5.13 | Rest Period | 41 |
| 5.14 | Lunch Period | 41 |

5.15        Heat Sterilization..................................................................................41

**Article VI- Vacations:**

6.01        Vacation Pay........................................................................................41
6.01 (a)    Week/1 year........................................................................................41
     (b)    2 Weeks/2 Years..................................................................................42
     (c)    3 Weeks/5 Years..................................................................................42
     (d)    4 Weeks/12 Years................................................................................42
     (e)    5 Weeks/20 Years................................................................................42
     (f)    6 weeks/25 Years Option for Employees-
            Cash/Stock Payment.............................................................................42
     (g)    Vacation Day at a Time........................................................................42
     (h)    Vacation Day at a Time - Up to 15 Days................................................43
     (i)    Daily Vacation – Half Day....................................................................44
6.02         Vacation Pay Calculation ....................................................................44
6.03        When Vacation is Paid.........................................................................44
6.04 (a)    Vacation for Employee Death...............................................................44
     (b)    Vacation for Terminated Employees.....................................................44
6.05        Vacation Scheduling - Suspension of Operations...................................45
6.06        Vacation Bidding.................................................................................45
6.07        Holiday occurring during a Vacation Period..........................................46
6.08        Vacation Pay Accrual...........................................................................46
6.09        Vacation Carry Over Exceptions...........................................................46
6.09 (a)    Vacation in Lieu of Time Off................................................................46
6.10        Vacation Pay-Layoff/LOA...................................................................46
6.11        7 x 24 Weekly Vacation........................................................................47
6.12        5 x 8 Weekly Vacation..........................................................................47

**Article VII -Conflict Resolution & Grievance Procedure:**

7.01        Conflict Resolution..............................................................................47
7.01 (a)    Decision Making..................................................................................48
     (b)    Step II Grievable..................................................................................49
     (c)    Step III Grievable.................................................................................49
     (d)    Step IV Grievable.................................................................................49
     (e)    Step V Grievable..................................................................................49
7.02        General Grievances..............................................................................50
7.02 (a)    Group General Grievances...................................................................50
     (b)    Witnesseth General Grievance..............................................................51

Finally:

7.03       Grievance for Discharged Employee....................................................51
7.04       Union Access to Plant..........................................................................51

**Article VIII- Management of Plant & Acknowledgment:**

8.01       Acknowledgment.................................................................................52
8.02       Reasonable Full Time Job ...................................................................52
8.03       Temporary Transfer to/from Plant........................................................52
8.04       Assignment of Work - Outside of Bargaining Unit Employees...........52

**Article IX - No Strikes and Lockouts:**

9.01       No Strike..............................................................................................53
9.02       Liability for Damages...........................................................................53
9.03       Employee Participation........................................................................53
9.04       No Lockout..........................................................................................53

**Article X - Rate of Pay:**

10.01 (b-f)  Across the Board Increase ...............................................................54
10.02      Shift Premium......................................................................................54
10.03      Create New Job/Substantially Change Existing Job...........................55
10.04      Transfer to Lower Rate........................................................................55
10.05      Rate Protection....................................................................................55
10.06      Rate of Pay Upon Transfer..................................................................56
10.07      Qualified Trainer Rate .........................................................................56
10.08      New Start Rate....................................................................................56

**Article XI - Benefit Plans:**

11.02      Quaker Benefit Plans...........................................................................57
11.03      Income Security Plan...........................................................................57
11.04      Separation Allowance..........................................................................60

**Article XII - Non-Permanent Employees:**

12.01      Non-Permanent Employees.................................................................63

**Article XIII - Period of Agreement:**

13.01      Dates of Agreement.............................................................................63
13.02      Extension of Agreement......................................................................63
13.03      Agreement Amendment.......................................................................63
           Checkoff Authorization ........................................................................64
           Rates of Pay by Classification.............................................................65
           Glossary of Terms................................................................................68
           Letters of Agreement/Understanding...................................................72

This agreement made and entered into at Danville, Illinois as of June 16, 2019 by and between Quaker Oats Manufacturing, LLC, 1703 East Voorhees Street, Danville, Illinois, hereinafter called the "Company" and the Bakery, Confectionery, Tobacco Workers & Grain Millers International Union AFL-CIO and its affiliated local #347-G, Danville, Illinois, hereinafter called the "Union" both parties agrees as follows:

**PREAMBLE:**

This collaborative agreement between Quaker Oats Manufacturing, LLC and the Bakery, Confectionery, Tobacco Workers & Grain Millers Local #347-G in Danville, Illinois, has been created to support the growth of the Semi-Autonomous Team culture, maximize job security and create an environment to significantly influence our own destiny. To empower ourselves and hold ourselves accountable to our stakeholders.

We are committed to a joint process of problem solving, decision-making, conflict resolution, and trust with open and honest communication.
Our sphere of influence philosophy will promote a competitive advantage and the integration of people, technology and people systems. We value sharing in the wealth we create, diversity, innovation, and accountability for our actions and accomplishments.

We recognize the complexity of change, the challenge of sustainability while developing an organization built with pride and built to last, and the power of working together for a common goal.
We are here by choice and we stay by choice.

**WITNESSETH:**

The purpose of this agreement is to promote and insure harmonious relations, cooperation, and understanding between all employees, to improve the quality of the product, to encourage economy of operation, elimination of waste, cleanliness of the plant, protection of the property and safety of employees; to ensure true collective bargaining and good working conditions. All employees agree to treat each other in a considerate, courteous manner, and provide efficient and cooperative service.

1

# ARTICLE I
## Commitments, Responsibilities, Recognition and Union Security

The Company and Union recognize and accept their responsibility to rapidly transform our workplace into a highly effective Semi-Autonomous Team to create and maintain a positive work environment. To accomplish the same for the present and future, all employees shall have the following responsibilities:

**1.01 Joint Labor Management Committee (LMC):**
The parties pledge to:

Establish and maintain a Labor Management Committee. The committee will consist of representatives from both the Union and the Company. The purpose of the committee will be to enhance compliance with the collective bargaining agreement and minimize causes of misunderstanding between employees, the Union, and the Company. The committee will be co-chaired by the Union President and the Company Human Resource Manager. The Committee will consist of four (4) representatives selected by the Union and four (4) representatives selected by the Company. Committee co-chairpersons will mutually establish the monthly meeting schedule and are responsible for developing an agenda in advance of each meeting.

**Responsibilities:**
**1.01 (a) The Employees will:**
1. Strive for innovation, all employees will urge each other to participate in decision making which affects their work and enhances their lives.
2. Maintain a relationship with their internal customers and suppliers.
3. Provide positive and adjusting feedback with which we hold each other accountable.
4. Create, maintain and promote a harmonious relationship with their team and throughout the Danville Plant.
5. Take pride in their work, promote/adhere to the Danville Vision, Mission, and Guiding Principles, while adhering to the highest standard of conduct.
6. Participate in the scheduling process within their sphere of influence.
7. Take personal responsibility for the success of the teams and other team members.

8. Jointly resolve all issues affecting the team and its members.
9. Recognize and fully utilize the unique differences and talents of all employees.
10. Resolve issues with consensus (when applicable) by the team members present.
11. Eliminate recurring problems, thereby leading to sustainable results and continuous improvement.
12. Knowledgeable of key performance indicators (KPI's) and current performance levels for all key stakeholders.
13. Know what is expected of them (the goal), be in agreement with it (help set the goal and have adequate resources and time to achieve).
14. Through training, develop the skills necessary to achieve the 1999 Breakthrough Goals while maximizing the use of current resources and the skills developed.

**1.01 (b) The Company will:**
1. Determine the products to be manufactured.
2. Determine the schedule of production methods, processes and means of production.
3. Have the right to hire (however, a joint process may be used when hiring).
4. Have the right to promote.
5. Have the right to suspend, discipline or discharge for just cause.
6. Determine reasonable working rules that will be reviewed by the Union Executive Board (UEB)
7. Retain the right to transfer employees or relieve employees from duty because of lack of work or other reasonable cause should the Company and the UEB be unable to reach consensus.
8. Retain the right to assign work and establish work schedules should the Company and the UEB be unable to reach consensus.
9. Provide training and other resources necessary for employees to have the knowledge, skills and abilities needed to fulfill employees' responsibilities.

10. Encourage and respect employees' decisions which impact them by fully recognizing and utilizing the unique differences and talents of all employees.
11. Encourage and assist employees in implementing their innovative ideas; evaluate and respond to innovative ideas beyond an employee's/team's ability to implement.
12. Recognize employees will assume non-traditional roles and recognize roles will change with time.
13. The Company will be the leader to "walk the talk" adhering to the Danville Plant Vision, Mission, and Guiding Principles.
14. Allow, upon request from the Union Executive Board excused time off for elected officers, including Stewards, to conduct Union Business and corresponding responsibilities, provided reasonable notice is submitted to the Company.
15. It is agreed between the Company and the Union, that the Company will pay BCTGM Local #347-G Union Executive Board for "lost time." This shall mean any earnings (including overtime) lost from work at Quaker Oats while working on Union Business, for any given day. Payment of lost time may be granted to other BCTGM Local #347-G Union Members with prior approval from the Company.

    The BCTGM Local #347-G Executive Board shall consist of the President, Vice-President, Financial Secretary/Treasurer, and Recording Secretary. The Company will send BCTGM Local #347-G Treasurer an itemized statement of the Union members' lost time monthly. Following receipt of their monthly statement, the BCTGM Local #347-G Financial Secretary/Treasurer will reimburse the Company for those dollars.

**1.01 (c) The Union will:**
1. Represent bargaining unit employees regarding all terms and conditions of employment in accordance with this agreement.
2. Strive to improve the quality of life for its members and their families by assuring they will be treated according to the Vision, Mission, and Guiding Principles and provided with economic security.

6

3. Recognize the necessity of continuous improvement as a factor contributing to the growth of the Company which is the source of its member's employment and income.
4. Work with the Company to establish and maintain plant wide operating guidelines (norms).
5. Continue to lead and nurture the development and implementation of the Semi-Autonomous Team process.

**1.01 (d)** The parties recognize the value of Union Stewards and Company Supervisors who understand their obligations under the Collective Bargaining Agreement (CBA). In an effort to achieve this understanding, the parties agree to the following for the life of the 2019 CBA:

1. Once each year at a time mutually agreed to, the Company and Union will hold a joint training session for the Union Stewards and Company Supervisors, employed by the Danville Plant. The parties may include additional employees by mutual agreement.

2. The training will be for two (2) days, unless otherwise agreed to. One of the two days will be a joint session with all attendees conducted by a third party such as the FMCS. The third party will be selected and paid by both parties. The joint session will be for the purpose of training supervisors and stewards on contract language and their roles and responsibilities within the framework of the CBA. The second day will be a BCTGM International conducted shop steward training session.

3. The Company agrees to allow the Union Stewards who will be attending the training time off for the two (2) days.

4. The parties recognize that the Union and Company Leadership at Danville may change over the course of the CBA and as such, give those leaders the ability to modify this understanding as long as the intent and purpose remain intact.

**Covered & Excluded Employees**

**1.02** The Union is recognized as the sole and exclusive bargaining agent for: all hourly-paid production, shipping and receiving, driver, maintenance and boiler employees, employed at the Company's Danville, Illinois plant, located at 1703 East Voorhees Street, Danville, Illinois excluding all office employees planning and drafting employees, laboratory and Quality Assurance technicians,

7

professional and technical employees, guards, watchmen, and supervisors as defined in the National Labor Relations Act, as amended.

**Union Membership**
**1.02 (a)** Except as may be provided by law, each new employee covered by this agreement who fails to acquire or maintain membership in the Union shall be required, as a condition of employment, beginning on the 61st working day following the beginning of such employment or following the signing of this Agreement, whichever is later, to pay to the Union each month a service charge as a contribution toward the administration of this Agreement and the representation of such employee. The service charge for the first month shall be in an amount of the Union's regular and usual monthly dues. As well as applying to all new employees, the above provision shall apply to all present employees who are members of the Union as of the effective date of this Agreement or who later join the Union.

**Union Dues**
**1.02 (b)** The Company shall deduct Union dues, or service charges as provided in 1.02 (a), from the pay of all employees who hereafter voluntarily authorized such deductions in writing. Deductions shall be made on the first payday of each month and shall be remitted to the Union. If an employee does not receive a paycheck on the first payday of the month, dues will be deducted on the second payday of the month if the employee receives a paycheck. If an employee does not receive a paycheck on the first or second payday of the month, dues will not be deducted from any subsequent paychecks in that month, but will be deducted on the first payday of the next month together with the regular dues deducted for that month.

Each authorization given under this Section shall be irrevocable for a period of one (1) year from the date of delivery to the Company, or until the termination of the collective agreement between the Company and the Union which is in force at the time of delivery of the authorization, whichever occurs sooner. The authorization shall be automatically renewed, and shall be irrevocable for successive periods of one (1) year each or for the period of each succeeding applicable collective agreement between the Company and the Union, containing a similar check off provision, whichever shall be shorter, unless written notice is given by the employee to the Company and the Union, not more than twenty (20) days and not less than ten (10) days prior to the expiration of each one (1) year

period, or of each applicable collective agreement between the Company and the Union, whichever occurs first.

**1.02 (c)** A copy of the form for individual authorization under 1.02(a) above is attached to this Agreement.

**Non-Discrimination Clause**
**1.03** The Company and the Union agree there shall be no coercion of nor discrimination against any employee because of his or her membership or non-membership in the Union, or because of race, religion, color, sex, age, national origin or against qualified employees who are handicapped, disabled veterans, or veterans of any military conflict. The Union agrees that there shall be no solicitation of membership or other Union activities on the Company's time that will interrupt the business of the Company.

**FLL/Agents of the Company. Employees' Non-Performance of Bargaining Unit Work**
**1.04** FLL's or Agents of the Company may perform duties or work in the following instances:
  a. For purposes of instruction or training of employees and/or FLL's/Agents of the Company or for personal relief.
  b. In the performance of experimental or development work, or assisting in starting up machinery on newly installed lines.
  c. In emergencies when qualified regular employees are not available and continuity of maximum quality of production requires, until a qualified employee can provide relief for such purposes.
  d. Frontline Leaders working are not intended to be construed as authorizing Frontline Leaders to perform work in violation of the contract. The Plant Manager will communicate this understanding to all Frontline Leaders.

## ARTICLE II
### Seniority

**Probationary Employees**
**2.01** All newly hired employees except those hired for non-permanent work will acquire no seniority until they have actually worked 480 hours. The Company will

who so receives vacation pay in lieu of a vacation shall not be eligible for vacation or vacation pay in any subsequent year until after he/she has returned to regularly scheduled work for a period of four (4) months. In no event shall any employee be eligible for vacation benefits in any calendar year unless he/she has performed regularly scheduled work for the Danville Plant during some part of the calendar year, or requested by the UEB and approved by Human Resources.

**C-12 Weekly Vacations**
**6.11** Employees on a C-12 schedule will begin their weekly vacation on their first scheduled workday. They will not be required to work the four (4) days before or after their scheduled weekly vacation. Employees on a C-12 schedule who sign up for overtime semi-annually will not be obligated or required to work as stated above, but can volunteer by signing the daily overtime request sheet.

**5 x 8 Weekly Vacations**
**6.12** Employees who are scheduled on a weekly vacation on the 5 x 8 schedule will not be required to work the weekend before their scheduled vacation begins. If an employee volunteers to work either day, they are subject to be required to work both days.

## ARTICLE VII
## Conflict/Issue Resolution & Grievance Procedure:
**Conflict Resolution**
**7.01** The success of our mutual relations under this agreement depends on our commitment to address issues immediately and in a fair and responsible way. We have chosen this method to drive out unnecessary delays and to keep the resolution, wherever appropriate, within the "sphere of influence" of the parties involved. Through our mutual pledge to approach concerns in a joint problem solving manner, we have established the following process to resolve conflict/issues which arise among us.

There is no limit on the nature of issues, which may be referred to this process by employees. The process will be used to advance positive ideas as well as to examine perceived wrongs. The only qualifications are that the affected person(s) certify the issue as a responsible one of genuine concern and thereafter participate first hand in its resolution in a timely and efficient manner. Employees will be paid scheduled rates for work time required for issue resolution.

In each of the steps listed below, the parties will apply the following process to attempt to resolve an issue:
1. Acknowledge that the conflict exists (this allows the parties to focus on the cause of the issue).
2. Gain common ground (this reminds the parties they need to work together to resolve the issue).
3. Seek to understand all points of view (this does not mean gaining agreement, what facts do we agree on, what facts don't we agree on).
4. Attack the issue, not each other (once again, this keeps the parties focused on the issue to resolve).
5. Develop an action plan (this allows each party to understand who has what accountability in resolving the issue).

The parties agree that issues should be presented and resolved as quickly as possible and pledge themselves to do so.

## Step I
### Grievance Resolution:

**7.01 (a)** Before any issue (with the exceptions listed in 7.02 and 7.03) is documented as a grievance and assigned a grievance number, the employee will attempt to resolve the issue with the key person or group who is closest to the issue and has the resources and authority to implement resolution. Employees may seek assistance from their Steward, where applicable.

A grievance, wherever used in this Agreement, will mean any issue on the part of the Union or any employee in regard to the interpretation and application of the specific terms and provisions of this Agreement.

If the issue is believed to be a grievance, the Steward will schedule a meeting with the employee and the FLL. The meeting will be held within three (3) working days of notification or extended by mutual agreement of the Steward and the FLL. If the issue is not resolved through Step I, The Steward presents the written grievance along with any pertinent information to the FLL. The FLL, before concluding the Step I meeting and with the Steward present, schedules the Step II meeting within five (5) work days or a mutually agreed to date. The Steps contained in Article 7.01 (b) through 7.01 (e) will be followed.

## Step II
### Grievance Resolution:

**7.01 (b)** If the issue isn't resolved under Step I, and the Union wishes to process the grievance further, the employee and a Chief Steward will meet with the Business Unit Manager, or designee (and FLL as necessary). The Company will provide a written answer to the Chief Steward within five (5) work days of the Step II meeting.

## Step III
### Grievance Resolution:

**7.01 (c)** If the issue isn't resolved under Step II, and the Union wishes to process the grievance further, the Union will present the written grievance to the HR Supervisor within five (5) work days (or mutually agreed to date) after receipt of the Step II answer. A meeting will be scheduled (date set by HR and the Union Executive Board) to attempt to resolve the issue. Human Resources, the Executive Board, the appropriate Business Unit Manager and the appropriate Chief Steward(s) at the E-Board's discretion. The International Business Representative and the Plant Manager are also optional attendees. Answers will be distributed within fifteen (15) work days following the Step III meeting.

## Step IV
### Grievance Resolution:

**7.01 (d)** If the issue isn't resolved under Step III, and the Union wishes to process the grievance further, the Union will notify Human Resources of their intent to arbitrate within fifteen (15) work days following the receipt of the Step III answer. The grievance will be submitted to FMCS Expedited Arbitration process if the contested grievance is for contract language interpretation, administration of Company Policies, or discipline up to but not including unpaid suspensions and terminations. In addition, grievances regarding benefits, the pension program, or settlement request greater than $10,000 are excluded from this process. The Company and Union may jointly submit any grievance to the FMCS Expedited Arbitration process.

## Step V
### Grievance Resolution:

**7.01 (e)** If the issue isn't resolved under Step III of the Grievance Resolution Process (if Step IV is not applicable) and the Union wishes to process the grievance further, the Union will notify Human Resources of their intent to

arbitrate within fifteen (15) work days following the receipt of the Step III answer. The Union will request a panel of five (5) nominees from the Federal Mediation and Reconciliation Service and will file for arbitration within three (3) months of the issuance of the intent to arbitrate letter. Should the Company and Union not agree on which of the five (5) nominees will serve as the Arbitrator, the Company and Union will alternate striking one name from the list until one name remains; the name remaining will be the Arbitrator. If the arbitration panel is not struck within thirty (30) days of filing for arbitration due to Union negligence or delay, the grievance will be withdrawn. If the arbitration panel is not struck within thirty (30) days of the Union filing for arbitration due to Company negligence or delay, the grievance will be granted.

No more than one grievance will be heard by an Arbitrator except by mutual agreement of the parties. The decision of the Arbitrator will be final and binding on the parties. Arbitration will be limited to the settlement of specific claims arising out of the interpretation and application of the specific terms and provisions of this Agreement. An Arbitrator may not add to, subtract from or modify any terms of the terms of this Agreement. It is agreed that rates of pay will not be subject to arbitration except as provided for in 10.03.

Except as otherwise provided in this Agreement, any arbitration award will not be retroactive beyond the date the issue and/or grievance was first presented in writing to the Company.

Each party agrees to bear the expense of its own council, representatives, witnesses, and the aggrieved employee(s). The parties will pay one-half of all other expenses of the Arbitrator. The charge for transcript copies will be borne solely by the party requesting them.

### General Grievances:

**7.02** The Union Executive Board shall have the right to file general grievances of a type which could not be brought by individual employees. Such grievances shall be filed in writing with the Human Resources Manager of the Company, and will be handled in accordance with the grievance procedure beginning in Step III.

**7.02 (a)** If a group of employees are involved in one grievance, the group may be represented by not more than two (2) of the aggrieved employees.

**7.02 (b)** In regard to the Witnesseth Clause, employees will cite a specific contract clause, in addition to the Witnesseth Clause, if applicable.

**Grievance For Discharged Employee**
**7.03** When an employee holding seniority is discharged the Company will notify a Union official. The outlined grievance procedure shall be available to any discharged employee or any employee who has been suspended for disciplinary reasons who thinks such action was unjust and who had seniority established at the time of his/her discharge, or disciplinary suspension. The Company will issue letters of discipline concerning suspensions and terminations after the Company has completed its investigation and has made its decision concerning the issuance of discipline. It is understood that employees may be placed on an indefinite suspension during the investigatory process. Written claim from the employee of unjust discipline or discharge shall be given to the Company within five (5) scheduled working days for an employee working a 5 x 8 or C-8 schedule and four (4) scheduled working days for an employee working a C-12 schedule after written notice of the discharge or suspension is received by the employee or Union.

Any grievance will be filed in writing with the Human Resources Manager and will begin at Step III of the Grievance procedure.

Discipline and or discharge of an employee, shall be administered within five (5) scheduled working days for an employee working a 5 x 8 or C-8 schedule and four (4) scheduled working days for an employee working a C-12 schedule from the date of the action giving cause for the discipline or discharge.

Grievances involving a discharge will be automatically moved to Step III of the Grievance Resolution procedure.

**Union Access to Plant**
**7.04** The International Representative or an authorized representative of the Union may visit the plant provided they first obtain permission from the designated representative of management and provided that such visitation does not interfere with effective plant operation.

# ARTICLE VIII
Acknowledgment:

**Acknowledge**

**8.01** The Company and the Union openly acknowledge that the present relationship is one based on mutual trust and focused on joint management. Both parties also recognize that over time there will be changes in both the appointed and elected leadership at the Danville Plant. That change, when it occurs, may result in different philosophies as to how the business should be managed. In that regard, it is understood, that to maintain respective responsibilities to all the key stakeholders, the Company retains the responsibility for and ability to make final decisions for operation of the Danville Plant. The Union, likewise, to maintain responsibility to their membership of the Bakery, Confectionery, Tobacco Workers & Grain Millers Local #347-G, retains their ability to process disputes or disagreements through the grievance procedure, up to and including arbitration.

**Reasonable Full Time Job**

**8.02** With reasonable notice and after consulting with the Union Executive Board, the Company shall have the right to increase or change the content of any job, provided such change does not thereby make the jobs more than a reasonable full-time job.

The Union shall have the right under the grievance procedure, up to and including arbitration, to question whether any changed or increased job has become more than a reasonable full-time job.

**Temporary Transfer to/from Plant**

**8.03** Nothing in this Agreement will prohibit a joint labor/management decision from using skilled labor from other plants of The Quaker Oats Company nor from sending skilled labor of the Danville Plant to other plants for training or other agreed upon temporary project work.

**Assignment of Work-Outside of Bargaining Unit Employees**

**8.04** The Company, recognizing the interest of all parties involved in having some general understanding of the Company's policies respecting work assignments ordinarily performed by bargaining unit employees, declares the following as its present intent: